**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATHANIEL JOHNSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-5517 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| THE DARREN FINDLING LAW FIRM, | ) | |
| PLC and THE LAW OFFICES OF | ) | |
| JASON A. WAECHTER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is about an heir who sued the estate's lawyers for legal malpractice. Stacey Johnson died tragically when her motorcycle crashed with a car driven by Joyce Collins. Stacey Johnson did not have a will. So, a state court appointed her mother, Kristina Johnson, to serve as the independent administrator of her estate.

Kristina Johnson then hired the Darren Findling Law Firm (the "Findling firm") to represent her as estate administrator. Later, another law firm, the Law Offices of Jason A. Waechter (the "Waechter firm"), was enlisted to pursue a recovery from Collins.

The Waechter firm negotiated a $250,000 pre-suit settlement with Collins's insurance company. Kristina Johnson approved the settlement, and so did a state court judge. Stacey Johnson's heirs then reached a settlement to divide the proceeds between them, after paying the Findling firm and the Waechter firm.

Plaintiff Nathaniel Johnson, Jr. is Stacey Johnson's father and an heir to her estate. He signed on to the settlement and received nearly $25,000. He acknowledges that he was *not* a client of either the Findling firm or the Waechter firm. But he was dissatisfied with the legal

representation that each firm provided to the estate.  He believes that the estate should have sued Collins instead of settling with her insurance company.

So, Nathaniel Johnson, Jr. filed a lawsuit of his own.  He sued the Findling firm and the Waechter firm in state court for legal malpractice under both contract and tort theories, and for breach of fiduciary duty.  Even though he was not a client of either firm, Nathaniel Johnson, Jr. alleges that the law firms owed him a duty as a third-party beneficiary of their agreements with Kristina Johnson as estate administrator.  Defendants removed the case to federal court and filed motions to dismiss for failure to state a claim.

For the reasons stated below, the Court grants the motions to dismiss the complaint.

**Background**

At the motion-to-dismiss stage, the Court must accept as true the complaint's well-pleaded allegations.  *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020).  The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint."  *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

This case began with a tragic accident on the Fourth of July.  On July 4, 2020, Stacey Johnson was involved in a motor vehicle accident in Michigan.  *See* Cplt., at ¶ 4 (Count I)[1] (Dckt. No. 1-1).  The details are not entirely clear from the complaint, but Johnson was riding a motorcycle that crashed with a car driven by Joyce Collins.  *Id.*  Stacey Johnson was transported to a hospital, where she was later pronounced dead.  *Id.* at ¶ 5.

Her death set this case in motion.  Stacey Johnson was an Illinois resident, and she died intestate (meaning without a will).  *Id.* at ¶¶ 4, 6.  So, someone had to serve as the administrator

---

[1]  The Complaint has three counts, and paragraph numbering restarts at the beginning of each count.  *See* Cplt. (Dckt. No. 1-1).  To keep things clear, the Court will note which count the paragraph corresponds to.

of her estate during the state-law probate proceedings (meaning the process to distribute her assets and pay her final bills).

An Illinois state court appointed Stacey Johnson's mother, Kristina Johnson, to serve as the independent administrator of the estate during the probate proceedings. *Id.* at ¶¶ 7–8. In this role, Kristina Johnson was "authorized to take possession of and collect the estate of the decedent Stacey Johnson." *Id.* at ¶ 8.

Kristina Johnson hired a law firm to help her administer the estate. Defendant Darren Findling Law Firm, PLC represented Kristina Johnson as the estate's independent administrator. *Id.* at ¶ 10; *see also* Darren Findling Representation Agreement (Dckt. No. 25-3).

At some point, the state probate court determined that Stacey Johnson had five heirs, including Kristina Johnson (her mother) and Plaintiff Nathaniel Johnson, Jr. (her father). *See* Cplt., at ¶¶ 4, 13 (Count I) (Dckt. No. 1-1). So, Plaintiff Nathaniel Johnson, Jr. was a potential beneficiary of any assets in the estate.

As it turned out, the estate did not have many assets to distribute. In fact, the only asset that the estate had was a potential legal claim against Collins, the driver of the car involved in the auto accident. *Id.* at ¶ 35.

So, the estate faced a decision about how to proceed against Collins. On the complaint's telling, either the Findling firm or Kristina Johnson (acting as estate administrator) hired Defendant Law Offices of Jason A. Waechter to pursue a recovery from Collins. *See id.* at ¶ 25 ("Defendant Findling engaged Defendant Waechter about the consequences of the underlying driver – Ms. Collins' involvement in Stacey Johnson's personal injuries and death . . . ."); *id.* at ¶ 62 ("On information and belief, Defendant Findling entered a contract or agreement with Defendant Waechter for the latter to obtain a monetary remedy against Ms. Collins for

proximately causing Stacey Johnson's injuries and wrongful death . . . ."); *id.* at ¶ 63
("Alternatively on information and belief, Defendant Waechter either entered an additional
contract, or entered a singular contract with Kristina Johnson only and not with Defendant
Findling, to legally represent her as the independent administrator in the Estate of Stacey
Johnson case . . . .").  Either way, the key point is that the Waechter firm entered the picture to
handle the estate's claims against Collins.

    The Waechter firm then "negotiated with Ms. Collins' insurer to obtain her policy
benefits for the consequences of Ms. Collins' involvement in Stacey Johnson's personal injuries
and death."  *Id.* at ¶ 28.  Collins's insurance company was willing to settle the matter for
$250,000.  *See id.* at ¶ 33; Settlement Agreement, at § 1 (Dckt. No. 25-2).  That amount
represented Collins's "insurance policy limit."  *See* Cplt., at p. 23 (Count I) (Dckt. No. 1-1).

    The decision to settle with Collins's insurance carrier, or litigate any potential claims,
was up to Kristina Johnson as the estate's administrator.  *Id.* at ¶ 33.  She decided to settle.  *Id.* at
¶¶ 33–34.  Relying on "the legal advice of Defendant Waechter and Defendant Findling,"
Kristina Johnson signed a release "regarding Ms. Collins' involvement in Stacey Johnson's
personal injuries and death."  *Id.* at ¶ 33.  In exchange, "Ms. Collins' insurer paid policy benefits
for distribution to the heirs and lawyers connected to the Estate of Stacey Johnson case."  *Id.*

    The record does not include the settlement agreement with the insurer, so the exact terms
are somewhat up in the air.  But based on the complaint's telling, it appears that the estate
released Collins from claims for wrongful death, personal injury, and any survival actions in
exchange for the $250,000 policy limit.  *Id.* at ¶ 97.  It also appears that a state-court judge
"approved the out of court insurance policy settlement of $250,000.00 to be split between the
decedent's heirs and two law firms."  *See* Settlement Agreement, at § 1 (Dckt. No. 25-2).

In light of the settlement, the estate never sued Collins, under any theory of liability. *See* Cplt., at ¶¶ 29–31 (Count I) (Dckt. No. 1-1). "The sole monetary recovery regarding Ms. Collins' involvement in Stacey Johnson's personal injuries and death . . . was from Ms. Collins' policy benefits." *Id.* at ¶ 32.

With $250,000 in hand, the estate turned to figuring out how to pay Stacey Johnson's final bills and distribute any remaining funds to her heirs. At this point, the complaint gets even hazier. Based on documents attached to the briefs, the parties first went to the probate court to determine how to distribute the funds. *See* Estate's Mtn. to Apply Mich. Law (Dckt. No. 51-2).

Kristina Johnson, as the estate administrator, moved to apply the Michigan Wrongful Death Act to distribute the settlement proceeds. *Id.* Recall that Stacey Johnson crashed with Collins in Michigan. The Findling firm represented Kristina Johnson as the administrator of the estate and filed a brief on her behalf. *Id.* at 10.

Plaintiff Nathaniel Johnson, Jr. opposed Kristina Johnson's motion and argued that Illinois law, not Michigan law, applied to settlement distribution. *See* Pl.'s Resp. to Mtn. to Apply Mich. Law (Dckt. No. 51-3); Action Order (Dckt. No. 50, at 25 of 28). He was represented by John O. Noland, Jr., his counsel of record in this case. *See* Pl.'s Resp. to Mtn. to Apply Mich. Law, at 11.

It does not appear that the probate court resolved this dispute (though again, it is hard to know for certain based on the complaint). Instead, the Findling firm and the estate's heirs (including Kristina and Nathaniel Johnson) signed a release and settlement agreement specifying how to divide the $250,000. *See* Cplt., at ¶¶ 14–17 (Count I) (Dckt. No. 1-1); Settlement Agreement (Dckt. No. 25-2).

So, after the estate settled with Collins and her insurer (settlement #1), Stacey Johnson's heirs and the Findling firm settled to divide the proceeds (settlement #2). This second settlement appears to have resolved the choice-of-law issue pending before the state probate court.

The second settlement divided the $250,000 recovery into three buckets. First, both the Findling firm and the Waechter firm were awarded attorneys' fees and costs. The Findling firm received its fees and costs "as the law firm for the Estate." *See* Settlement Agreement, at § 1 (Dckt. No. 25-2); *see also id.* (awarding costs "to Findling as the Estate's law firm").

The Waechter firm received $83,333.33 in attorneys' fees, an amount equal to one-third of the total settlement amount ($250,000 ÷ 3 = $83,333.33). *Id.* Although the Waechter firm received a disbursement under the settlement agreement, it was *not* a party to the agreement. *Id.* at p. 1.

Second, Kristina Johnson received funds "as reimbursement of her payments" to a funeral home and cemetery. *Id.* As estate administrator, Kristina Johnson had to pay for Stacey Johnson's final bills. It appears that part of the settlement amount was used to pay her back.

Third, the five heirs received payments from the "residuary balance" of the estate's assets. *Id.* Kristina Johnson received 34% of the residuary, or $36,175.33. *Id.* Recall that in addition to being the estate's administrator, Kristina Johnson was also Stacey's mother and an heir to her estate.

Plaintiff received an award, too. He received 23% of the residuary balance, or $24,471.55. *Id.* Plaintiff and his attorney signed the settlement agreement in May 2022. *Id.* at p. 4.

In addition to distributing funds, the settlement agreement included a release from liability. The release was broad and applied to both the parties and their attorneys. The parties

agreed that: "In consideration for said payments, the Settling Parties . . . do hereby release one another and their . . . attorneys . . . from any and all manner of claims, actions, causes of actions, demands, obligations, liens, rights, damages, costs, loss of service, expenses and/or compensation of any nature whatsoever, except as otherwise provided herein, that now has or that may hereafter accrue to the account of, or in any way growing out of, any and all known or unknown, foreseen or unforeseen, damages related to the case." *Id.* at § 2.

The next paragraph includes an exception to the parties' release. Titled a "Carveout from Nathaniel Johnson Jr's Release," the parties agreed that Plaintiff had not released the Findling firm for certain claims. "Notwithstanding the generality and breadth of his release in the foregoing Section 2 Nathaniel Johnson Jr shall not be deemed to have released 'The Darren Findling Law Firm, PLC, aka The Probate Pro' from claims for legal malpractice based on contract and tort, and for breach of fiduciary duty." *Id.* at § 3. The carveout does not mention the Waechter firm.

So, the settlement agreement included a broad release from liability. But it also exempted legal malpractice and breach of fiduciary duty claims that Plaintiff might bring against the Findling firm.

For its part, the Findling firm seems to have worked in a caveat of its own. The carveout from the release agreement also states that "[n]othing in the foregoing Nathaniel Johnson Jr carveout is intended to act or shall be construed as an admission by The Darren Findling Law Firm, PLC . . . that Nathaniel Johnson Jr has standing or a factual or legal basis to assert such malpractice claims, or that said attorneys owe him any duty, which is specifically denied." *Id.*

7

As the carveout foreshadowed, Nathaniel Johnson, Jr. was displeased with the estate's legal representation. So, he sued both the Findling firm and the Waechter firm in state court in Illinois. *See* Cplt. (Dckt. No. 1-1).

Broadly speaking, the complaint takes issue with the legal representation that Kristina Johnson received when deciding to settle with Collins's insurance company. In Plaintiff's view, the estate "obtain[ed] an inadequate settlement from the underlying driver Ms. Collins' insurer instead of filing a Court case for wrongful death, [personal injury,] and a survival action which would have obtained more money." *Id.* at ¶ 97 (Count I).

Plaintiff alleges that any case against Collins would have been successful, and would have returned more than the settlement amount. *Id.* at ¶ 126(a). In particular, Plaintiff believes that the estate could have obtained more money by suing Collins. The complaint alleges that Collins has financial resources. She "owned at minimum, a home and vehicle such that an underlying money judgment would have been collectable in addition to her policy benefits." *Id.* at ¶ 99.

Plaintiff recognizes that, at the time of the settlement, Collins did not own a home. *Id.* at ¶ 102. Instead, Collins transferred her home to a revocable living trust (of which she was the trustee) on July 27, 2020, for $1. *Id.* at ¶¶ 103 (b), (e), 125. The transfer came just 23 days after Stacey Johnson's death. *Id.* at ¶ 125. The trust later sold the home in March 2021 for $185,000. *Id.* at ¶ 103(e).

Plaintiff alleges that the transfer of Collins's home to her revocable trust was fraudulent. *Id.* at ¶ 104. And he alleges that Defendants should have sued "to recover a judgment for the $185,000 value of the fraudulently transferred and conveyed home." *Id.* at ¶ 116.

Plaintiff's complaint has three counts. Count I alleges legal malpractice under a breach-of-contract theory. *Id.* at ¶¶ 1–126 (Count I). Count II alleges legal malpractice in tort. *Id.* at ¶¶ 1–13 (Count II). That claim is brought in the alternative to the relief requested in Count I. *Id.* at ¶ 1. Count III alleges a breach of fiduciary duty. *Id.* at ¶¶ 1–58 (Count III). Again, the claim is brought in the alternative to the relief requested in Counts I and II. *Id.* at ¶ 1.

Plaintiff acknowledges that he was *not* a client of either the Findling firm or the Waechter firm. *Id.* at ¶ 87 (Count I). Instead, the complaint alleges that "[a] direct attorney client relationship between Plaintiff and Defendants is not required here since Plaintiff is a third party contractual beneficiary of the attorney client relationship between Defendants," and Kristina Johnson. *Id.* at ¶ 88. Plaintiff alleges that he was "an intended third party contractual beneficiary of the relationship between the independent administrator and the two Defendants" and that "the Defendants' duty to the independent administrator extends to the non-client Plaintiff." *Id.*; *see also id.* at ¶¶ 3–8 (Count III) (alleging that Defendants had a fiduciary duty to Plaintiff as an estate heir).

Waechter removed the case to federal court, and the Findling firm consented to removal. *See* Notice of Removal, at ¶ 31 (Dckt. No. 1). The Waechter firm and the Findling firm then filed separate motions to dismiss the complaint for failure to state a claim. *See* Waechter Mtn. to Dismiss (Dckt. No. 5); Findling Mtn. to Dismiss (Dckt. No. 24).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the

plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Analysis

### I. Converting the Motions to Dismiss to Motions for Summary Judgment

Before digging into the merits, the Court considers whether the motions are appropriately characterized as motions to dismiss. Plaintiff argues that the motions should be converted to motions for summary judgment because they address material outside the pleading. *See* Pl.'s Resp. to Findling, at 1–3 (Dckt. No. 48); Pl.'s Resp. to Waechter, at 1–2 (Dckt. No. 49).

Plaintiff's argument about the Findling firm's motion centers on two documents that the law firm attached to its motion. First, it attached the "Release and Settlement Agreement" that distributed the proceeds from the settlement with Collins's insurance company between the law firms and the heirs. *See* Settlement Agreement (Dckt. No. 25-2). Second, it attached the representation agreement with Kristina Johnson to represent her as the independent administrator of the estate. *See* Darren Findling Representation Agreement (Dckt. No. 25-3).

Plaintiff argues that the Court cannot consider these documents without converting the Findling firm's motion to dismiss into a motion for summary judgment. In Plaintiff's view, "Findling wrongly claims [its] attached contract and related arguments are central to plaintiff's claims of legal malpractice and fiduciary duty" when the documents are central only "to Findling's defense." *See* Pl.'s Resp. to Findling, at 1 (Dckt. No. 48). Plaintiff contends that the

10

"complaint sporadically mentions the contract in a general sense and does not have any pure contract claims." *Id.* at 2.

In responding to the Waechter firm's motion to dismiss, Plaintiff argues that the motion "argues additional fact based arguments . . . not restricted to the confines of the complaint." *See* Pl.'s Resp. to Waechter, at 1 (Dckt. No. 49). Specifically, Plaintiff objects to the Waechter firm arguing that Plaintiff had no damages, could not prove the elements of a legal malpractice claim, and already litigated the issue in state probate court. *Id.*

Both Defendants also submitted filings from the state court matter in their reply briefs. *See* Estate's Mtn. to Apply Mich. Law (Dckt. No. 51-2); Pl.'s Resp. to Mtn. to Apply Mich. Law (Dckt. No. 51-3); Action Order (Dckt. No. 50, at 25 of 28). The state-court filings show that Plaintiff opposed the estate on the law that should be applied to distribute the settlement proceeds.

Generally, when reviewing a motion to dismiss, the Court may "consider only the plaintiff's complaint." *Rosenblaum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). So, in some instances, "if the moving party submits documents outside the complaint along with its motion to dismiss, the Court either must ignore the documents or convert the motion to a motion for summary judgment." *Hakim v. Accenture U.S. Pension Plan*, 2009 WL 10740578, at *2 (N.D. Ill. 2009) (citing Fed. R. Civ. P. 12(b)).

But there are exceptions. "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (collecting cases). So, the

general rule that courts are permitted to examine only the complaint when ruling on a motion to dismiss has exceptions.

For one, "[i]t is well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (quotation marks omitted). Under "the incorporation-by-reference doctrine . . . if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Those documents include contracts when the plaintiff's "claims are grounded in the . . . contract." *Mueller*, 880 F.3d at 895.

Additionally, even when a document is not mentioned in the complaint, a court may consider it on a motion to dismiss if it is integral to the complaint. *See Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022) ("In evaluating the sufficiency of the complaint, we consider documents integral to the complaint that might aid in determining whether a plaintiff is entitled to relief.").

Courts also can take judicial notice of matters of public record at the motion-to-dismiss stage. In fact, "[i]t's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss." *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022). Like documents incorporated by reference, "[t]aking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment." *Id.* (alteration in original) (quoting *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012)).

On this front, the Seventh Circuit has "long held that district courts can take judicial notice of public court documents and proceedings when considering a Rule 12(b)(6) motion." *Id.* (collecting cases); *see also Collins v. Village of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) (noting that "judicial notice of public court documents is appropriate when ruling on a Rule 12(b)(6) motion to dismiss"). Judicial notice is proper for "facts readily ascertainable from the public court record and not subject to reasonable dispute." *Ennenga*, 677 F.3d at 774.

Applying these standards, there is no need to convert Defendants' motions to dismiss into motions for summary judgment. Defendants did put other documents in play. But they are either central to the complaint and incorporated by reference, or the proper subject of judicial notice.

Start with the contracts. Based on the complaint's allegations, the representation contract between the Findling firm and Kristina Johnson as the estate administrator is central to Plaintiff's claims. Plaintiff alleges that he was a third-party beneficiary of Kristina Johnson's *agreements* with both law firms. *See* Cplt., at ¶ 65 (Count I) (Dckt. No. 1-1) (stating that "a contract was entered between Defendant Findling and said independent administrator and Plaintiff was a third party contractual beneficiary through said contract"); *id.* at ¶ 66 (stating that "a contract was entered between Defendant Waechter and said independent administrator and Plaintiff was a third party contractual beneficiary through said contract"). The complaint repeatedly reiterates this point. *See, e.g.*, *id.* at ¶ 27 ("Plaintiff was a third-party beneficiary of the legal contractual relationship, or quasi-contractual relationship between Defendant Waechter and Kristina Johnson . . . ."); *id.* at ¶ 74 ("Plaintiff, as Stacey Johnson's heir, was an intended third party contractual beneficiary of the duty owed to the independent administrator by the Defendants . . . ."); *id.* at

¶ 80 ("Both Defendants breached contractual duties owing to Plaintiff as a third party contractual beneficiary . . . .").

That is, the law firms owe Plaintiff a duty only if he is a third-party beneficiary of the agreements that they made with Kristina Johnson. So, determining the scope of the agreements between Defendants and Kristina Johnson is important to whether Plaintiff was a third-party beneficiary to those agreements. *See Damian v. SmithAmundsen, LLC*, 2023 WL 3886109, at *2 (N.D. Ill. 2023) ("Even when duty is grounded in tort, courts look to the contract to define legal services because, at bottom, the legal action arises out of either an express or implied contract.") (quotation marks omitted).

Plaintiff seems to recognize this point. The complaint even attaches an affidavit "stating facts showing that any relevant contracts entered by Defendants with Kristina Johnson to legally represent her as the independent administrator in the Estate of Stacey Johnson case were not accessible to him, and *therefore Plaintiff may allege a breach of contract here, without attaching a contract*." *Id.* at ¶ 64 (emphasis added); *see also* Johnson Aff. (Dckt. No. 1-1, at 42 of 48).

So, Plaintiff recognized that the contracts were relevant to this case. He even went out of his way to say why he could allege breach of contract without including the contracts themselves. Because the complaint mentions the contracts, Defendants "may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Brownmark Films*, 682 F.3d at 690.

The same is true of the settlement agreement distributing the proceeds of the estate's settlement with Collins. The complaint alleges that the other heirs "signed a settlement agreement" releasing "Defendant Findling from all future claims." *See* Cplt., at ¶ 14 (Count I) (Dckt. No. 1-1). But Plaintiff alleges that he did not agree to this release. Plaintiff "specifically

was allowed a 'carve out,' a waiver, an exception to that settlement agreement in which he was specifically allowed the ability to file claims for legal malpractice in tort and contract and for breach of fiduciary duty against defendant Findling." *Id.* at ¶ 15. Because of this waiver in the settlement agreement, "Plaintiff is the only party that has standing to bring this instant suit." *Id.* at ¶ 16.

Again, the settlement agreement satisfies the incorporation-by-reference rule. The complaint expressly mentions the agreement. And it is central to Plaintiff's claim because the complaint alleges that, but for the agreement's carveout, Plaintiff could not bring his claims at all. *Id.*

Finally, the Court can consider the state-court filings when ruling on the motion to dismiss. The filings are "public court documents" from a court "proceeding[]." *Fosnight*, 41 F.4th at 922. They're fair game to establish what happened during the state-court litigation.

That said, "courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed." *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997). Here, the Court relies on the public filings only to establish what the parties filed in state court.

In sum, the Court declines to convert the motions to dismiss into motions for summary judgment. The Court will consider only those documents permitted at the motion-to-dismiss stage. *See Geinosky*, 675 F.3d at 745 n.1.

## II. Legal Malpractice (Counts I and II): The Existence of a Duty to Plaintiff Johnson

The Court begins by considering whether Defendants owed a duty to Nathaniel Johnson, Jr. as a non-client. The Court concludes that the Findling firm (meaning the firm that

represented the estate generally) did not owe a duty to Plaintiff, but the Waechter firm (meaning the firm that pursued the insurer) did owe him a duty.

Because this is a diversity case, "Illinois' substantive law governing legal malpractice applies." *UFT Com. Fin., LLC v. Fisher*, 991 F.3d 854, 857 (7th Cir. 2021). A plaintiff pleading attorney malpractice in Illinois has options. He can bring the claim as a breach of contract claim, or as a tort claim. The Illinois Supreme Court has "rule[d] that a complaint against a lawyer for professional malpractice may be couched in either contract or tort and that recovery may be sought in the alternative." *Collins v. Reynard*, 607 N.E.2d 1185, 1186 (Ill. 1992). The court's decision "adhere[d] to that long line of Illinois cases allowing pleading and recovery in tort for lawyer malpractice." *Id.*

"Under either a tort or contract theory, the elements of a legal malpractice claim" are the same. *Cleveland v. Rotman*, 297 F.3d 569, 572 (7th Cir. 2002). "While the plaintiffs are entitled to plead a legal malpractice action in either tort or contract, recovery under both theories in the same complaint is sought in the alternative." *Majumdar v. Lurie*, 653 N.E.2d 915, 920 (Ill. App. Ct. 1995). "To state a claim for legal malpractice under Illinois law, a plaintiff must plead the following elements: (1) an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that but for the attorney's malpractice, the plaintiff would have prevailed in the underlying action; and (4) actual damages." *Rocha v. Rudd*, 826 F.3d 905, 909 (7th Cir. 2016) (quotation marks omitted).

So, no matter how the claim is pled, a plaintiff needs to plead a duty on the part of the defendant lawyer or law firm. That duty can arise in contract or in tort. But the existence of a duty is a necessary linchpin of a claim. *See Est. of Hudson ex rel. Caruso v. Tibble*, 99 N.E.3d

16

105, 111 (Ill. App. Ct. 2018) ("In order for a plaintiff to prevail on a legal malpractice claim, he must plead and prove that his counsel owed him a duty arising from the attorney-client relationship, that counsel breached that duty, and that as a proximate result of the breach, he suffered an injury.") (cleaned up).

"The question of whether a legal duty exists – and the extent of such duty – is a question of law." *Damian*, 2023 WL 3886109, at *2. "The general rule in Illinois is that an attorney owes a duty of care only to his client and not to third parties." *Schechter v. Blank*, 627 N.E.2d 106, 109 (Ill. App. Ct. 1993). Attorneys represent specific clients, not the world at large.

"There is a small corner of legal malpractice law, however, in which Illinois recognizes that attorneys owe professional duties to persons who are not their clients." *Oakland Police & Fire Retirement Sys. v. Mayer Brown*, 861 F.3d 644, 650 (7th Cir. 2017). In these cases, "[a]n attorney owes a duty to a nonclient only in the most limited circumstances." *Neal v. Baker*, 551 N.E.2d 704, 705 (Ill. App. Ct. 1990).

"A narrow exception . . . has been carved out in limited circumstances. An attorney owes a duty to a third party only where the attorney was hired by the client specifically for the purpose of benefitting that third party." *Oakland Police & Fire Retirement Sys.*, 861 F.3d at 650. "In fact, the only time an Illinois attorney owes a duty of care to a third party is when the attorney was hired for the primary purpose of benefitting that third party." *Reynolds v. Henderson & Lyman*, 903 F.3d 693, 696 (7th Cir. 2018).

To show a duty, "[t]he third party 'must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party.'" *UFT Com. Fin.*, 991 F.3d at 858 (quoting *In re Est. of Powell*, 12 N.E.3d 14, 20 (Ill. 2014)).

The Seventh Circuit has noted that "the Illinois Supreme Court has recognized *only three types of non-clients* able to establish that they are the primary beneficiaries of an attorney's relationship with another client and thus are owed a duty of care." *Oakland Police & Fire Retirement Sys.*, 861 F.3d at 653 (emphasis added). These three types of non-clients owed a duty are: (1) third-party beneficiaries of wills, (2) third-party beneficiaries of wrongful death actions, and (3) and third-party recipients of formal opinion letters. *Id.*; *see also id.* at 650 ("Examples of third parties to whom attorneys owe a duty include third-party beneficiaries of wills, third-party beneficiaries of wrongful death actions, and third-party recipients of formal opinion letters.").

The Court considers in turn whether the Findling firm and the Waechter firm owed a duty to Plaintiff as a third-party beneficiary.

### A. The Findling Firm

The Findling firm argues that it did not owe a duty to Plaintiff as a third-party beneficiary of its attorney-client relationship with Kristina Johnson. *See* Findling Mem. in Supp. of Mtn. to Dismiss, at 5–11 (Dckt. No. 25). It contends that Kristina Johnson did not hire it primarily for Plaintiff's benefit. *Id.* at 6. Instead, she hired it for the primary purpose of representing her as estate administrator.

The complaint alleges that the Findling firm represented Kristina Johnson in her role as independent administrator of the estate. *See* Cplt., at ¶¶ 8–10 (Count I) (Dckt. No. 1-1). Both the Findling firm's representation agreement and the settlement agreement seem to confirm this point. The representation agreement lists Kristina Johnson as the client in the "Estate of Stacey Johnson" matter. *See* Darren Findling Representation Agreement (Dckt. No. 25-3). The settlement agreement states that the Findling firm received its fees and costs "as the law firm for

the Estate." *See* Settlement Agreement, at § 1 (Dckt. No. 25-2); *see also id.* (awarding costs "to Findling as the Estate's law firm").

The Court begins by noting that estate beneficiaries (or heirs) are *not* one of the three types of non-clients that the Seventh Circuit has identified are owed a duty under Illinois law. *See Oakland Police & Fire Retirement Sys.*, 861 F.3d at 653. Unlike actions brought on behalf of the estate, "[a] wrongful death action is brought for the exclusive benefit of the beneficiaries who are the true parties in interest as opposed to an action that is brought to benefit the decedent's estate." *In re Powell*, 12 N.E.3d 14 (Ill. 2014).

To be sure, the creation of the estate also created duties. For one, as the estate's lawyer, the Findling firm owed a duty to both Kristina Johnson (as the estate administrator) and the estate itself. *See Est. of Hudson ex rel. Caruso v. Tibble*, 99 N.E.3d 105, 114 (Ill. App. Ct. 2018) ("Thus, we find the attorney-client relationship between an attorney and an estate to be inherent when the attorney is retained to assist in the administration of the estate."); *id.* (holding that "an attorney hired by an estate representative to assist in the administration of an estate owes a duty to the estate").

Likewise, Kristina Johnson owed a fiduciary duty to Nathaniel Johnson for matters related to the administration of the estate. *See In re Est. of Little Pony Eagle*, 2019 WL 396780, at *14 (Ill. App. Ct. 2019) ("The representative of an estate has a fiduciary obligation to all of the individuals having an interest in the decedent's estate, including heirs and creditors."). But that does not mean that the Findling firm – as the *attorney* for the estate – owed a duty to Nathaniel Johnson, Jr. as a third party.

In fact, Illinois courts have repeatedly rejected the argument that an attorney representing an estate owes a duty to the estate's beneficiaries. *See In re Est. of Lis*, 847 N.E.2d 879, 892–93

(Ill. App. Ct. 2006) (collecting cases). Illinois courts have rejected arguments that an estate's attorneys "owed a duty to all of the heirs since they were hired for the benefit of the Estate." *Id.* at 889.

The primary purpose of the attorney's representation is not to benefit or influence the estate's beneficiaries. Instead, "[t]he primary purpose of the attorney-client relationship between [the estate administrator] and [its law firm is] to assist [the estate administrator] in the proper administration of its duties." *Neal*, 551 N.E.2d at 706.

The "role of an administrator's attorney" flows from "the purposes of an administrator of an estate." *In re Est. of Lis*, 847 N.E.2d at 890 (quotation marks omitted). Those purposes are not solely, or even primarily, focused on the estate's beneficiaries.

"The purposes of administrating an estate are to conserve the personal assets of the estate, including the collection of all debts due to the decedent; to pay all debts and taxes owed by the decedent and her estate; and to properly distribute the residue among the heirs at law according to the terms of the decedent's will or, absent a will, the statute of descent and distribution." *In re Est. of Godinez*, 2018 WL 1162600, at *4 (Ill. App. Ct. 2018) (quoting *In re Est. of Lis*, 847 N.E.2d at 886). "Generally, it is the duty of an executor or administrator to perform these tasks and, in so doing, carry out the wishes of the decedent and act in the best interest of the estate." *Id.*

Given the administrator's primary role, "the primary purpose of the attorney's relationship with the executor [is] to assist the executor in the proper administration of the estate." *Jewish Hosp. of St. Louis, Mo. v. Boatmen's Nat'l Bank of Belleville*, 633 N.E.2d 1267, 1277 (Ill. App. Ct. 1994); *see also Basista v. Alms*, 2015 WL 6641142, at *7 (Ill. App. Ct. 2015) (holding that the attorney's primary purpose is "to assist [the estate administrator] in the

20

administration of the . . . estate"). So, the attorney's "primary duty [is] to [the] executor of the estate and not to the beneficiaries of the estate." *Rutkoski v. Hollis*, 600 N.E.2d 1284, 1289 (Ill. App. Ct. 1992).

The settlement agreement distributing the $250,000 shows that Kristina, and by extension the Findling firm, had duties beyond distributing assets to the heirs. For example, nearly $27,000 of the proceeds was used to reimburse Kristina Johnson for Stacey Johnson's funeral expenses. *See* Settlement Agreement, at § 1 (Dckt. No. 25-2). As administrator, Kristina Johnson was responsible for "pay[ing] the debts of the decedent and estate." *In re Est. of Lis*, 847 N.E.2d at 890. Likewise, the agreement paid for the Findling firm's legal services as the estate's attorney. *See* Settlement Agreement, at § 1. These payments were related to Kristina's primary responsibility of administering the estate.

True, the estate's lawyer may do work that benefits the estate's heirs. After all, "the beneficiaries of an estate are intended to benefit from the estate and are owed a fiduciary duty by the executor to act with due care to protect their interests." *Gagliardo v. Caffrey*, 800 N.E.2d 489, 496 (Ill. App. Ct. 2003). But "any such benefit [is] incidental [to] the true purpose the relationship." *Basista*, 2015 WL 6641142, at *7. "Simply because a third party benefitted from an attorney's representation of a client does not create a duty between the attorney and the third party, let alone an attorney-client relationship." *In re Est. of Valentino*, 2023 WL 4543052, at *6 (Ill. App. Ct. 2023). Absent "explicitly include[d] facts" alleging that the attorney's "primary duty was to the beneficiaries," an attorney representing an estate does not owe a duty to the beneficiaries. *Rutkoski*, 600 N.E.2d at 1289.

Here, the complaint does not include any facts alleging that the Findling firm's primary duty was to the heirs. Instead, the complaint acknowledges that "Findling was the law firm

legally representing the Independent Administrator, Kristina Johnson, in the Estate of Stacey Johnson case." *See* Cplt., at ¶ 10 (Count I) (Dckt. No. 1-1).  So, Kristina Johnson "retained counsel to assist her in the proper administration of [Stacey's] estate," not to benefit Plaintiff.  *In re Est. of Lis*, 847 N.E.2d at 893.

One reason an estate's attorney does not owe a duty to the estate's beneficiaries is the potential for conflict between the estate and the heirs.  Sometimes the estate administrator and the heirs don't see eye to eye.  The heirs typically want the largest possible distribution of the estate's assets, while the estate administrator must manage the broader objectives of the estate (including paying its bills).  *See In re Est. of Kirk*, 686 N.E.2d 1246, 1250 (Ill. App. Ct. 1997) ("Often, the estate's adversary is a beneficiary of the estate who is contesting the will or making a claim against the estate or petitioning to have the executor removed or held liable for the mismanagement of the estate.").

In these cases, "[a]n attorney representing an estate must give his first and only allegiance to the estate, in the event that . . . an adversarial situation arises" with the estate's beneficiaries. *Jewish Hosp. of St. Louis*, 633 N.E.2d at 1277.  So, "[e]ven though beneficiaries of a decedent's estate are intended to benefit from the estate, *an attorney for an estate cannot be held to a duty to a beneficiary of an estate*, due to the potentially adversarial relationship between the estate's interest in administering the estate and the interests of the beneficiaries of the estate."  *Id.* at 1277–78 (emphasis added).  A third-party beneficiary cannot "successfully [bring] an action against [the estate's lawyer] because of the potentially adversarial relationship between an executor's interest in administering the estate and the interests of the beneficiaries of the estate." *Rutkoski*, 600 N.E.2d at 1289.

Illinois courts have reiterated this rule: if the estate's relationship with an heir becomes adversarial, the estate's attorney owes a duty only to the estate. *See Gagliardo*, 800 N.E.2d at 496 (noting that estate beneficiaries "are not . . . owed allegiance by the estate attorney, who does not have an attorney-client relationship with the beneficiaries and whose first and only allegiance is to the estate in such adversarial situations") (quotation marks omitted); *In re Est. of Kirk*, 686 N.E.2d at 1250 ("An attorney representing an estate must give his first and only allegiance to the estate when such an adversarial situation arises. Even though the beneficiaries of a decedent's estate are intended to benefit from the estate, *an attorney cannot be held to have a duty to those beneficiaries, due to this potential adversarial relationship*.") (emphasis added) (citation omitted).

Here, the state-court record shows that Plaintiff took an adversarial position to the estate. He argued that Illinois law should apply when determining how to distribute the settlement with Collins's insurance company. *See* Pl.'s Resp. to Mtn. to Apply Mich. Law (Dckt. No. 51-3). The estate argued that Michigan law should apply. *See* Estate's Mtn. to Apply Mich. Law (Dckt. No. 51-2).

The conflict of interest between the estate (the Findling firm's client) and Plaintiff illustrates why the Findling firm did not owe Plaintiff a duty. It could not owe a duty to both the estate and Plaintiff simultaneously because the two were at loggerheads.

In sum, the Findling firm did not owe a duty to Plaintiff. Without a duty, Plaintiff's legal-malpractice claims cannot succeed. Therefore, the Court dismisses Counts I and II against the Findling firm.

### B.     The Waechter Firm

Next, the Court considers whether the Waechter firm owed a duty to Plaintiff.  Like the Findling firm, the Waechter firm contends that it did not owe a duty to Plaintiff as a non-client.  *See* Waechter Mem. in Supp. of Mtn. to Dismiss, at 8 n.2 (Dckt. No. 6).

The Waechter firm stands in a different position than the Findling firm.  Unlike the Findling firm, who served as the attorney for Kristina Johnson as estate administrator, the Waechter firm had a narrower role.  It was hired to pursue claims against Collins on behalf of the estate.  *See* Cplt., at ¶¶ 25, 62–63 (Count I) (Dckt. No. 1-1).

As the Waechter firm acknowledges, those claims included a potential wrongful death action.  The settlement with Collins's insurance company was in lieu of "a Court case for wrongful death, [personal injury,] and a survival action."  *Id.* at ¶ 97.  The Waechter firm's negotiations led to Kristina Johnson "settling *a wrongful death case* stemming from a motor vehicle accident."  *See* Waechter Mem. in Supp. of Mtn. to Dismiss, at 1 (Dckt. No. 6) (emphasis added).

The Waechter firm's role as the law firm representing the estate in pursuing a wrongful death claim means that it owed a duty to Plaintiff as an heir.  As the Seventh Circuit noted, "third parties to whom attorneys owe a duty include . . .  third-party beneficiaries of wrongful death actions."  *Oakland Police & Fire Retirement Sys.*, 861 F.3d at 650.

The Illinois Supreme Court squarely addressed this issue in *In re Powell*, 12 N.E.3d 14 (Ill. 2014).  There, the court applied the primary purpose test and concluded that "the primary purpose and intent of an attorney-client relationship between the personal representative of the deceased and the attorney who brings a wrongful death action is to benefit the decedent's beneficiaries."  *Id.* at 21.  So, the court held that attorneys owe a duty to the beneficiaries of

wrongful death suits. *Id.*; *see also Mohn v. Van der Veen*, 2019 WL 13207481, at *7 (C.D. Ill. 2019) ("The Illinois Supreme Court has held that an attorney bringing a wrongful death action owes a fiduciary duty to the decedent's beneficiaries.").

In reaching this conclusion, the Illinois Supreme Court distinguished estate beneficiaries from beneficiaries of wrongful death actions. The court did not "view the beneficiaries in a wrongful death action the same as individual beneficiaries of a decedent's estate, where a potential conflict of interest may arise between the estate's interest and the interest of each of the beneficiaries of the estate." *In re Powell*, 12 N.E.3d at 22.

In fact, "a wrongful-death action is not a true asset of the deceased's estate." *Carter v. SSC Odin Operating Co.*, 976 N.E.2d 344, 356 (Ill. 2012). Instead, "the action is filed for the 'exclusive benefit of the surviving spouse and next of kin of such deceased person.'" *Id.* at 354 (quoting 740 ILCS 180/2).

Here, the Waechter firm never filed a wrongful death action on behalf of Plaintiff or the other heirs. But it was retained "to obtain a monetary remedy against Ms. Collins for proximately causing Stacey Johnson's injuries and wrongful death." *See* Cplt., at ¶ 63 (Count I) (Dckt. No. 1-1). The representation ended with a successful out-of-court settlement from Collins's insurance company.

So, although the Waechter firm did not sue Collins, it represented the estate in a successful settlement of a wrongful death action. And as an heir to Stacey Johnson's estate, any wrongful death claim would be brought, in part, for Plaintiff's benefit.

In sum, the Court concludes that the Waechter firm owed a duty to Plaintiff because it represented the estate to pursue a potential wrongful death claim.

### III.    Legal Malpractice Claims Against the Waechter Firm (Counts I and II)

The existence of a duty is only part of the clam.  The complaint also must plausibly allege the other elements of a legal malpractice claim.  The Waechter firm contends that Plaintiff has not plausibly alleged a breach, proximate causation, and damages.  *See* Waechter Mem. in Supp. of Mtn. to Dismiss, at 8–12 (Dckt. No. 6).[2]

Plaintiff alleges that the Waechter firm had a duty "to use a reasonable degree of care in [its] legal representation e.g. to make proper legal decisions for the independent administrator and plaintiff."  *See* Cplt., at ¶ 72 (Count I) (Dckt. No. 1-1).  In Plaintiff's view, "proper legal advice . . . should have properly resulted in a higher dollar amount" from any claims against Collins.  *Id.* at ¶ 72.  Plaintiff also alleges that "[o]ne breach of the duty of care . . . was never informing Plaintiff as a third party contractual beneficiary, of their decision to negotiate" with Collins.  *Id.* at ¶ 75.

In Illinois, "it is the duty of every attorney to inform a client of the available options for alternative legal solutions as well as to explain the foreseeable risks and benefits of each."  *Keef v. Widuch*, 747 N.E.2d 992, 998 (Ill. App. Ct. 2001).  So, failing to discuss the settlement with Stacey's Johnson heirs potentially could have been a breach of the Waechter firm's duties to represent the heirs.

---

[2]  The Waechter firm also argues that the release in the settlement agreement bars Plaintiff's claims.  *See* Waechter Mem. in Supp. of Mtn. to Dismiss, at 5–7 (Dckt. No. 6).  The Court disagrees that Plaintiff's claims can be dismissed based on the release at this stage.  "A release is a contract and, as such, is governed by contract law." *Constr. Sys., Inc. v. FagelHaber, LLC*, 35 N.E.3d 1244, 1251 (Ill. App. Ct. 2015).  "Releases are strictly construed against the benefitting party and must spell out the intention of the parties with great particularity." *Fuller Fam. Holdings, LLC v. N. Tr. Co.*, 863 N.E.2d 743, 753 (Ill. App. Ct. 2007).  Special rules govern releases between parties in a fiduciary relationship, such as law firms and clients.  When "a fiduciary relationship exists between the parties, the defendant has the burden to show that a full and frank disclosure of all relevant information was made to the other party." *Constr. Sys.*, 35 N.E.3d at 1252 (citing *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756 (Ill. App. Ct. 2003)).  At this stage, the Court cannot assess whether the disclosure requirement was satisfied.  That's a factual question that cannot be resolved on a motion to dismiss.  So, the Court declines to dismiss the claims against the Waechter firm based on the release agreement.

But even if these allegations are enough to support the Waechter firm's breach of duty, Plaintiff has not alleged proximate causation. *See Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 656 (7th Cir. 2014) ("Nevertheless, even if DeAngelis breached his duty to Blythe, Blythe still must prove that but for DeAngelis' negligence, it would have acquired the vacant city lots in order to prevail on its legal malpractice claim.").

To allege proximate causation, the complaint must state facts that "but for the attorney's malpractice, the plaintiff would have prevailed in the underlying action." *Rocha*, 826 F.3d at 909. "The proximate cause element of a legal malpractice claim requires that the plaintiff show that but for the attorney's malpractice, the client would have been successful in the undertaking the attorney was retained to perform." *Green v. Papa*, 4 N.E.3d 607, 616 (Ill. App. Ct. 2014). "No malpractice exists unless counsel's negligence has resulted in the loss of the underlying action." *Blythe Holdings*, 750 F.3d at 656 (cleaned up).

On this front, the complaint falls short. In fact, the complaint includes *no* factual allegations about the success of a potential underlying action against Collins.

"A legal malpractice suit is by its nature dependent upon a predicate lawsuit. Thus, a legal malpractice claim presents a case within a case." *W. Bend Mutual Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016) (quoting *Nelson v. Quarles & Brady, LLP*, 997 N.E.2d 872, 880 (Ill. App. Ct. 2013)). That means that a court "assessing the sufficiency of a complaint of legal malpractice . . . must focus on the underlying claim." *Id.*

So, a plaintiff who alleges legal malpractice "must set forth a plausible statement not only that a breach of duty occurred but that the breach caused the plaintiff to lose a valid claim or defense in the underlying action *and that, absent that loss, the underlying claim would have been successful*." *Id.* (emphasis added) (quotation marks omitted). To survive a motion to dismiss, "a

plaintiff must also allege enough facts to support a second plausible 'case within a case.'"
*Kokenis v. Kurywczak*, 2022 WL 18862881, at *2 (N.D. Ill. 2022); *see also Fox v. Seiden*, 887
N.E.2d 736, 746 (Ill. App. Ct. 2008) (noting that, to satisfy the element of proximate causation in
a legal malpractice action, "the plaintiff must plead sufficient facts to establish that 'but for' the
negligence of the attorney, the client would have successfully defended the underlying suit");
*Ignarski v. Norbut*, 648 N.E.2d 285, 289 (Ill. App. Ct. 1995) (holding that the plaintiff's burden
to plead a case within a case was not satisfied where the pleadings did not "plead ultimate facts
establishing" its entitlement to relief).

In *West Bend*, the Seventh Circuit dismissed a legal malpractice action for failing to
plausibly allege proximate causation. The complaint described the "underlying . . . claim in
rather summary fashion" and said "nothing about [the] claimed injury or [the underlying] claim."
*W. Bend*, 844 F.3d at 677. Instead, the plaintiff alleged that it "was forced to accept a
disadvantageous position which greatly compromised its ability to defend the claim," and lost
"valuable factual and legal defenses that would have eliminated or substantially reduced any
liability." *Id.* at 677–78 (cleaned up).

The Seventh Circuit held that these allegations did not pass muster under plausibility
pleading standards. *Id.* Overall, the complaint left the court "to speculate as to whether and how
[the plaintiff] would have prevailed on the underlying claim." *Id.* at 679.

Here, the complaint says nothing about how a wrongful death action would have been
successful, let alone more successful than the $250,000 settlement. The complaint offers no
details, except alleging that the estate should have sued Collins for causing the accident. The
complaint gives no facts about the car crash, or Collins's negligence in causing the crash. It
alleges nothing about the theory of the case, except at the highest level of generality.

To be sure, the complaint does allege that Collins had other assets (including a home) that might have been recovered in any wrongful death action. *See* Cplt., at ¶ 99 (Count I) (Dckt. No. 1-1). But Collins's assets say nothing about whether the heirs would have successfully recovered them in a wrongful death action. Assets are one thing – a successful claim is another.

The complaint is missing any allegations about what a potential lawsuit could have alleged to prove a wrongful death case against Collins. *See Levin v. Abramson*, 2020 WL 2494649, at *12 (N.D. Ill. 2020) (Pacold, J.) ("While Abramson alleges that he lost the case and judgment was entered against him, *he does not explain how he lost the case or why Levin's actions caused him to lose*.") (emphasis added). Maybe Collins was not bled dry by the settlement, but the existence of financial liquidity does not mean that a better recovery was there for the taking.

Saying that a potential defendant has a lot of assets doesn't tell you anything about whether suing that defendant is a viable enterprise. Having a lot of assets does not necessarily make a potential defendant a fat target.

Here, the complaint says almost nothing about what claims the estate could have pursued, or why such claims would have been more successful than the strategy actually pursued. It is not as if the Waechter firm's strategy left the estate empty handed. Again, the complaint alleges that the law firm pursued a strategy that netted a settlement of $250,000. The complaint offers no reason to think that the bird in the hand was worth less than the two in the bush.

The complaint also states Plaintiff's belief that an underlying wrongful death action would have been "successful." *See* Cplt., at ¶ 126(a) (Count I) (Dckt. No. 1-1). This belief, without any supporting factual allegations, is not enough. The Court isn't required to accept unsupported "labels and conclusions." *Bell Atl. Corp.*, 550 U.S. at 555. Instead, Plaintiff needs

to allege facts about the underlying lawsuit itself. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together.").

In sum, the Court dismisses Counts I and II against the Waechter firm for failing to allege proximate causation.

## IV.    Breach of Fiduciary Duty (Count III)

Next, the Court turns to Plaintiff's claim for breach of fiduciary duty. *See* Cplt., at ¶¶ 1–58 (Count III) (Dckt. No. 1-1). The Waechter firm argues that this claim should be dismissed because it is duplicative with Plaintiff's legal malpractice counts. *See* Waechter Mem. in Supp. of Mtn. to Dismiss, at 13–15 (Dckt. No. 6). The Waechter firm contends that the allegations supporting the fiduciary duty claim "stem from the same operative facts" as the legal malpractice claims. *Id.* at 15.

"To state a cause of action for breach of fiduciary duty, a plaintiff must allege and ultimately prove (1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury." *In re Est. of Lis*, 847 N.E.2d at 885. A breach of fiduciary duty claim could be based allegations that also support a legal malpractice claim. *See Hanumadass v. Coffield, Ungaretti & Harris*, 724 N.E.2d 14, 18 (Ill. App. Ct. 1999) ("[I]ncluded within the rubric of legal malpractice are claims grounded in breach of contract, negligence, and breach of fiduciary duty."). After all, attorneys owe a fiduciary duty to their clients.

Although breach of fiduciary duty and legal malpractice can coexist, there are limits to bringing both claims in the same complaint. "Under Illinois law, 'despite the fact that actions for legal malpractice and breach of fiduciary duty are conceptually distinct, when the same operative

facts support actions for legal malpractice and breach of fiduciary duty resulting in the same injury to the client, the actions are identical and the later should be dismissed as duplicative.'" *Levin*, 2020 WL 2494649, at *11 (cleaned up) (quoting *Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1267 (Ill. App. Ct. 2008)). "Courts have consistently held that breach of fiduciary duty claims are duplicative of legal malpractice claims because any alleged legal malpractice claim includes a breach of fiduciary duty." *Beringer v. Standard Parking O'Hare Joint Venture*, 2008 WL 4890501, at *5 (N.D. Ill. 2008) (quotation marks omitted); *see also id.* ("[C]ourts applying Illinois law have concluded that breach of fiduciary duty claims are duplicative of legal malpractice claims.").

So, while a fiduciary duty claim might be viable, it cannot tag along with a legal malpractice claim based on the same allegations.

Here, Plaintiff's breach of fiduciary duty claim does not allege different facts from his legal malpractice claims. The complaint alleges that "there was a fiduciary duty owed by" the Defendants based on their attorney-client relationship with the estate. *See* Cplt., at ¶¶ 4, 6 (Count III) (Dckt. No. 1-1). So, the basis of the duty is the same as the legal malpractice claims.

The alleged injury is the same, too. Defendants advised Kristina Johnson to settle with Collins instead of bringing a lawsuit against her. *Id.* at ¶¶ 26–27. The complaint alleges that "Defendants, having a fiduciary duty to Plaintiff, breached their fiduciary duties by failing to file an action against the underlying driver Ms. Collins . . . which would have yielded an additional $185,000." *Id.* at ¶ 29. And "[b]ut for Defendants' breach of fiduciary duties, a successful underlying case against Ms. Collins would have occurred." *Id.* at ¶ 58.

That is, both the alleged fiduciary duties and the alleged breach of those duties stem from the same facts that support the legal malpractice claim. The claim is a rehash of the legal malpractice allegations.

Plaintiff does not contend that his fiduciary duty claim is based on different allegations than his legal malpractice claims. *See* Pl.'s Resp. to Waechter, at 10–12 (Dckt. No. 49). Instead, he argues that he can bring the claim in the alternative because it has different elements. *Id.* at 10–11. That argument is foreclosed by Illinois law. *See Levin*, 2020 WL 2494649, at *11.

In sum, the Court dismisses Plaintiff's fiduciary duty claim as duplicative with his legal malpractice claims.

## V.      Amending the Complaint

The Court closes by mentioning Plaintiff's references to amending his complaint. Plaintiff attached a draft of an amended complaint to the response to the motion to dismiss. A plaintiff cannot defeat a motion to dismiss by pointing to a draft complaint that is not the operative pleading. When it comes to complaints, the rule is simple: one at a time.

Plaintiff attached a proposed first amended complaint to both his responses to Defendants' motions to dismiss. *See* Proposed Am. Cplt. (Dckt. No. 48-1, at 62–117 of 118); Proposed Am. Cplt. (Dckt. No. 49-1, at 1–56 of 93). Plaintiff repeatedly mentions his proposed amended complaint in his responses to the motions to dismiss, including by analyzing the merits of the amendments. *See* Pl.'s Resp. to Findling, at 4, 6, 14 (Dckt. No. 48); Pl.'s Resp. to Waechter, at 4–5, 9–10, 14–15, 19 (Dckt. No. 49).

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a plaintiff to amend his complaint once without leave within 21 days of a defendant's motion to dismiss. Plaintiff did

not meet this deadline. A plaintiff thereafter needs either the defendant's consent or the court's permission to amend his complaint. *See* Fed. R. Civ. P. 15(a)(2).

"That rule exists for good reason. Orderly litigation requires pinning down what, exactly, the plaintiff is alleging. A defendant needs to know what it is defending itself *against*. Litigation is not supposed to be a moving target. A defendant needs a complaint that it can shoot at." *Patel v. Brennan*, 2021 WL 5937769, at *18 (N.D. Ill. 2021) (emphasis in original).

By attaching his proposed amended complaint to his responses, Plaintiff did not comply with the Federal Rules. He did not properly request leave to amend. And he did not pin down what he was alleging. After Defendants moved to dismiss the complaint, Plaintiff responded by shifting the target.

A court should ordinarily grant a plaintiff leave to amend his complaint once. *See Fosnight*, 41 F.4th at 924. But by attaching his proposed amended complaint to his responses to the motions to dismiss, Plaintiff did not properly seek leave to amend. If Plaintiff wants to amend his complaint, he must properly seek leave to do so.

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss the complaint (Dckt. Nos. 5, 24) are hereby granted. The Court grants Plaintiff leave to file a motion for leave to amend the complaint within two weeks of the entry of this Opinion.

Date: August 17, 2023

_____

Steven C. Seeger
United States District Judge

33