IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Nathaniel Johnson Jr, <br> Plaintiff, <br> <br> v. <br> <br> The Law Offices of Jason A. Waechter, <br> Defendant. | Case # 1:22-CV-05517 <br> <br> Judge Steven C. Seeger |

### FIRST AMENDED COMPLAINT

Plaintiff Nathaniel Johnson Jr, complains as follows.

### COUNT I. BREACH OF FIDUCIARY DUTY.

1. At all times relevant to the complaint and currently, Plaintiff is a Cook County resident in South Holland, Illinois.

2. At all times relevant to the complaint and currently, Defendant The Law Offices of Jason A. Waechter was located at 19080 W. Ten Mile Road, 2nd Flr Southfield, MI 48075. (Waechter or Defendant Waechter.)

3. On 7-4-2020 Plaintiff's daughter, Stacey Johnson, an Illinois resident, was involved in a motor vehicle accident (MVA) in Michigan with Joyce Marie Collins.

4. Stacey Johnson was transported from the accident scene to a hospital in Michigan City Indiana where she was pronounced dead by hospital doctors.

5. Stacey Johnson died intestate, without a will, trust, or any similar instrument.

6. As a result of her death, a Petition for Letters of Administration were filed by The Darren Findling Law Firm ("Findling"), who is not a defendant in this case, to establish The Estate of Stacey Johnson, Probate Case No. 2020P000822, in the DuPage County Circuit Court on 8-12-2020. (Estate of Stacey Johnson.)

1

7.      There was no executor in the Estate of Stacey Johnson case, there was only the Independent Administrator.

8.      Plaintiff Nathaniel Johnson Jr was designated by the Probate Court as an heir of Stacey Johnson.

9.      Waechter was engaged in connection with the Probate case about the consequences of Collins's involvement in Stacey Johnson's death resulting from the 7-4-2020 MVA.

10.     Attached is Plaintiff's affidavit pursuant to 735 ILCS § 5/2-606 stating facts showing that any relevant contracts entered by Defendant to legally represent the independent administrator in the Estate of Stacey Johnson probate case were not accessible to Plaintiff, and therefore Plaintiff may allege a breach of fiduciary duty against Waechter, without attaching a contract. Exhibit 1, affidavit.

11.     Waechter negotiated with Collins's insurer to obtain her policy benefits for the consequences of Collins's involvement in Stacey Johnson's wrongful death resulting from the 7-4-2020 MVA.

12.     Waechter did not, but should have, filed a wrongful death court action against Collins resulting from the 7-4-2020 MVA.

13.     Waechter did not engage other counsel to file a wrongful death court action against Collins resulting from the 7-4-2020 MVA.

14.     The Independent Administrator of the Estate of Stacey Johnson, signed in Joliet, Illinois an Insurer's release regarding Collins's involvement in Stacey Johnson's death resulting from the 7-4-2020 MVA in which Collins was the other driver.

15.     The sole monetary recovery regarding Collins's involvement in Stacey Johnson's death resulting from the 7-4-2020 MVA was from Collins's policy benefits.

16.     Plaintiff received no more than $24,471.55 of Collins's policy benefits of $250,000 as an heir in the Estate of Stacey Johnson case and did not receive any other distribution in said case or in any other connection with her.

17.     Defendant's role as the law firm representing the estate in pursuing a wrongful death claim in the insurer settlement, means that it owed a duty to Plaintiff as a third party beneficiary of such an action.

18.     Third parties to whom attorneys owe a duty include third-party beneficiaries of wrongful death actions.

19.     Plaintiff was the father and one of the decedent's beneficiaries.

20.     The primary purpose and intent of an attorney-client relationship between the personal representative of the deceased and the attorney who brings a wrongful death action is to benefit the decedent's beneficiaries in such an action.

21.     Defendant owed a fiduciary duty to Plaintiff as a third party beneficiary of an inchoate wrongful death court case against Collins.

22.     Plaintiff as a third party beneficiary in an inchoate wrongful death action is different from an individual third party beneficiary of a decedent's probate estate.

23.     A wrongful death action is filed for the benefit of the beneficiary and next of kin of a decedent such as Plaintiff, Stacey Johnson's father.

24.     There were breaches of this fiduciary duty by the Defendant as stated above and below.

25.     Plaintiff suffered a financial injury as a result of said breaches as stated above and below.

26.     There was a proximate cause between the breaches and the injury of financial damages to Plaintiff that proximately resulted from those breaches by the Defendant as stated above and below.

27. But for the breaches of fiduciary duty of the Defendant, the Plaintiff would not have suffered actual damages of the loss of a greater financial recovery available had a wrongful death action been filed by Defendant as stated above and below.

28. As a direct and proximate result of the breaches of fiduciary duty by defendant, Plaintiff would have had a greater financial recovery available had a wrongful death been filed by Defendant as stated above and below.

29. Plaintiff should have been named in a wrongful death court action by Defendant and as such would have been an intended beneficiary of the action rather than merely an incidental beneficiary, and therefore Defendant's fiduciary duty would extend to Plaintiff.

30. A wrongful death court action would have been more successful than the $250,000 insurer settlement by resulting in a higher monetary recovery to include at minimum Collins's $185,000 home as a collectable asset added with the insurer settlement.

31. Collins was negligent in causing the MVA with Stacey Johnson [plaintiff's daughter] for reasons stated below.

32. On 7-4-20 Collins, 87 years old, was operating her own vehicle with no passengers in New Buffalo Township, Michigan, heading southbound on a 4 lane roadway known as Red Arrow Highway just north of the intersection of Community Hall Road.

33. On that day Stacey Johnson was operating her own vehicle with no passengers on the same 4 lane roadway heading northbound just past the intersection with Community Hall Road.

34. Stacey Johnson operated her vehicle in the outermost northbound lane, and not in the innermost northbound lane.

35. The roadway was not physically divided between the 2 southbound and 2 northbound lanes.

4

36. Collins began turning left from the southbound lane and crossed into the northbound lanes of the roadway intending to go into a restaurant parking lot adjoining the northbound lanes of the roadway just north of the intersection with Community Hall Road.

37. Collins's operation of her vehicle in making a left hand turn from the southbound lane into the northbound lanes of the roadway was the cause of the collision with Stacey Johnson's northbound vehicle on the same roadway.

38. The Berrien County Sherriff's Office stated that Collins failed to yield.

39. Immediately after the collision Collins said she did not see Stacey Johnson's vehicle "in the shade".

40. Soon after the collision a Berrien County sheriff, on the scene, said he observed Stacey Johnson's vehicle in the outermost northbound lane.

41. Therefore Collins had more time to see Stacey Johnson's vehicle before the collision than if Stacey Johnson's vehicle had been in the innermost northbound lane.

42. Collins's failure to yield contributed to her causing the collision with Stacey Johnson's vehicle.

43. An ambulance soon thereafter transported Stacey Johnson to a Hospital in Michigan City Indiana, where she was pronounced dead by hospital doctors.

44. Criminal charges were made against Collins as a result of the 7-4-2020 MVA for a Moving Violation Causing Death.

45. Collins's post MVA acts allow the reasonable inference that Collins believed she would be held liable for money damages for Stacey Johnson in a wrongful death court case, as shown by virtue of the following, without limitation.

46. The post MVA transfer and conveyance of Collins's home were fraudulent under the Uniform Fraudulent Transfer Act (740 ILCS 160/1 *et seq.*) pursuant to the following.

    a) Collins's transfer and conveyance of her home was to an insider, the Joyce M. Collins Revocable Living Trust of which she was the sole trustee.

    b) said transfer and conveyance was on 7-27-2020, 23 days after the 7-4-2020 MVA.

    c) said transfer and conveyance occurred when Collins became a debtor on the 7-4-2020 MVA date, at which date an inchoate wrongful death action instantly arose against her involving the wrongful death of Stacey Johnson.

    d) Plaintiff then instantly became a creditor of Collins by virtue of the arising of such an inchoate cause of action.

    e) said transfer and conveyance on 7-27-20 for $1 (one dollar) in consideration was illusory in value, for a home worth $185,000, which was the sale price on 3-15-2021.

    f) said transfer and conveyance were made with the purpose of actual intent and or intent presumed in law, to hinder, delay, or defraud Plaintiff as Stacey Johnson's beneficiary–a creditor of Collins.

47. Illinois had the most significant contacts with Stacey Johnson's wrongful death and the Illinois Wrongful Death Act 740 ILCS 180/1 et seq., would have applied if such a court case were filed for the following reasons.

48. All heirs of Stacey Johnson as determined by the Illinois probate court were residents of Illinois and not in Michigan (one such heir moved from Indiana to Illinois during the pendency of the probate case).

49. The Illinois probate court would have a natural inclination to apply the law it is most familiar with–the Illinois forum's Wrongful Death Act.

50. The Independent Administrator of the Estate of Stacey Johnson, executed an insurer's release stating it was signed in Joliet Illinois regarding Collins's involvement in Stacey Johnson's death resulting from the 7-4-2020 MVA.

51. The Michigan site of the injury and Collins's Michigan residency are non-determinative for applying the Michigan Wrongful Death Act, especially since Stacey Johnson was pronounced dead in Michigan City, Indiana by hospital doctors there.

52. Collins had a duty while driving on a public roadway to exercise reasonable care for the safety of other persons who were lawfully upon the public roadways and thoroughfares, including Stacey Johnson.

53. At all times alleged herein, Stacey Johnson exercised reasonable care for her own safety and the safety of other persons who were lawfully upon the public roadways.

54. At the aforesaid date and place, Collins maintained, operated, and propelled her motor vehicle in such a careless and negligent manner that a collision occurred with the motor vehicle being operated by Stacey Johnson, causing her to sustain severe bodily injuries and death.

55. Collins was guilty of one or more of the following careless and negligent acts or omissions:

(a) Carelessly and negligently failed to keep a proper lookout for Stacey Johnson's motor vehicle on the roadway;

(b) Carelessly and negligently operated, maintained and controlled her motor vehicle;

(c) Carelessly and negligently operated said motor vehicle to collide with the lawful travel of the vehicle operated by Stacey Johnson in the roadway;

(d) Carelessly and negligently failed to slow or stop said motor vehicle when a collision with the motor vehicle being operated by Stacey Johnson was imminent;

(e) Carelessly and negligently failed to yield the right of way of the lawful travel of the vehicle operated by Stacey Johnson on the roadway.

56. One or more of the foregoing careless and negligent acts or omissions by Collins was the direct and proximate cause of Stacey Johnson sustaining severe and permanent bodily injuries and death.

57. One or more of the foregoing careless and negligent acts or omissions by Collins was the direct and proximate cause of Stacey Johnson sustaining damages causing pain, suffering, loss of a normal life, disability, lost income and financial loss, and death, requiring hospitalization, medical treatment and the expense associated therewith.

58. Therefore Collins was negligent in causing the collision which was the proximate cause of Stacey Johnson's death.

59. Collins would have therefore been held liable in a wrongful death court case regarding Stacey Johnson.

60. The negligent acts or omissions by Collins would have been the direct and proximate cause of sustaining damages by Plaintiff as a third party beneficiary and next of kin of Stacey Johnson, in a case under the Illinois Wrongful Death Act, including damages for grief, sorrow, and mental suffering.

61. A wrongful death court case would have been more successful than the insurer settlement because the allegations above and below show that Collins would have been found negligent for the MVA and liable in such a case and her asset of her $185,000 home at minimum would have been added to the insurer's $250,000 policy limit in a money judgment.

62. It was a breach of Waechter's fiduciary duty to Plaintiff in failing to discover Collins's fraudulent transfer as stated above and below herein which would have led to a wrongful death case being filed instead of pursuing settlement with Collins's insurer instead.

63. It was a breach of Waechter's fiduciary duty to Plaintiff in failing to have advised him of not filing a wrongful death court case and pursuing a settlement with Collins's insurer instead.

64. Plaintiff suffered a financial injury due to Defendant's breach of its fiduciary duty since Collins would have been found negligent for the MVA and liable in a wrongful death court case and her asset of her $185,000 home at minimum would have been added to the insurer's

8

$250,000 policy limit in a money judgment which Plaintiff in part would have been entitled to receive.

65. There was a proximate cause between Defendant's breach and Plaintiff's injury since Collins would have been found negligent for the MVA and liable in a wrongful death case and her asset of her $185,000 home at minimum would have been added to the insurer's $250,000 policy limit in a money judgment which Plaintiff in part would have been entitled to receive which would have been more successful than only receiving a share of the insurer settlement.

66. But for Defendant's breach of its fiduciary duty, a successful wrongful death case against Collins would have occurred to include her $185,000 home at minimum to have been added to the insurer's $250,000 policy limit in a money judgment.

67. The underlying driver Collins on the DOA of 7-4-2020 owned a home such that a money judgment would have been collectable if an underlying wrongful death case were filed in court, but for the Defendant, breaching the fiduciary duty owed to Plaintiff.

68. Collins had assets collectable for a potential underlying money judgment if a wrongful death case were filed in court, arising on the DOA of 7-4-2020 since she owned a home that day, but was later sold on 3-15-2021 for $185,000.

69. Collins's home value of $185,000 would have been a collectable asset to satisfy a potential underlying money judgment if a wrongful death case were filed in court, along with her insurer's $250,00 policy limit which would have also been included to satisfy part of any Court money judgment, to which Plaintiff would have received a share of.

70. The Defendant, owing a fiduciary duty to Plaintiff, breached its fiduciary duty by failing to file a wrongful death court action against Collins to void her fraudulent transfer and fraudulent conveyance of her home on 7-27-2020 after the 7-4-2020 DOA which would have yielded an

additional $185,000 asset for collection of a wrongful death money judgment, in addition to her insurance policy benefits.

71. The transfer and conveyance of Ms. Collin's home were both fraudulent *inter alia* as follows pursuant to 740 ILCS 160/1 *et seq*:

    a) criminal charges were made against Collins as a result of the 7-4-2020 MVA for a Moving Violation Causing Death which allows the reasonable inference that she was therefore motivated to transfer her home to avoid its being used to satisfy a money judgment in a potential wrongful death case.

    b) Collins's transfer and conveyance of her home was to an insider, the Joyce M. Collins Revocable Living Trust of which she was the sole trustee.

    c) said transfer and conveyance was on 7-27-2020 soon after the 7-4-2020 MVA.

    d) said transfer and conveyance occurred when Collins became a debtor on the 7-4-2020 MVA date, at which date an inchoate cause of action instantly arose against her for causing the wrongful death of Stacey Johnson, whereby Plaintiff, as her heir, then instantly became a creditor of Collins by virtue of the arising of the inchoate cause of action.

    e) said transfer and conveyance on 7-27-20 for $1 (one dollar) in consideration was illusory in value, for a home worth $185,000, which was the sale price on 3-15-2021.

    f) said transfer and conveyance were made with the purpose of actual intent and or intent presumed in law, to hinder, delay, or defraud Plaintiff as Stacey Johnson's beneficiary and next of kin and a creditor of Collins by virtue of the arising of the inchoate cause of action.

72. Alternatively the transfer and conveyance of Ms. Collin's home were both fraudulent since on 7-27-20 they were made by Collins without fair consideration (of $1) when she was engaged or was about to engage in a transaction for which the property of $1 remaining in her possession after the transfer and conveyance occurred, was unreasonably small capital.

73. Said transfer was fraudulent as to Plaintiff as Stacey Johnson's beneficiary and next of kin, who was Collins's creditor during the continuance of the transaction of the transfer/conveyance, without regard to her actual intent.

10

74. Alternatively the transfer and conveyance of Ms. Collin's home were fraudulent since on 7-27-20 they were made without fair consideration of $1 when the reasonable inference is that Collins intended or believed that she would incur a debt beyond her ability to pay of a future money judgment in a potential action for Stacey Johnson's wrongful death, with Plaintiff as Stacey Johnson's beneficiary and next of kin, becoming an instant creditor of Collins when an inchoate court action against her arose on the 7-4-20 MVA date.

75. Alternatively the transfer and conveyance of Collins's home on 7-27-20 were made with Collins's actual intent to hinder, delay, or defraud Plaintiff as a present creditor of Collins, arising from a potential money judgment from an inchoate action for Stacey Johnson's wrongful death judgment against her, which transfer and conveyance were fraudulent.

76. For fraudulent transfer and fraudulent conveyance purposes, Collins became a debtor on the 7-4-2020 MVA date, to Plaintiff who became her creditor- when an inchoate cause of action arose against her instantly for causing the wrongful death of Stacey Johnson on the 7-4-2020 MVA date.

77. Plaintiff's claim against Collins, did not have to be reduced to judgment, or have an actual wrongful death suit pending, for Plaintiff to become a creditor of her, or for her to owe a debt to Plaintiff, which conditions both arose automatically on the 7-4-2020 MVA date, when an inchoate cause of action arose instantly against her for causing the wrongful death of Stacey Johnson.

78. The Defendant, breached the fiduciary duty of care owed to Plaintiff, by failing to file an action against the Joyce M. Collins Revocable Living Trust to void the transfer and recover a judgment for the $185,000 value of the home, which was fraudulently transferred and fraudulently

11

conveyed by Collins which subsequently would have been available as a collectable asset in a wrongful death court case.

79. Punitive damages are allowed in Illinois, in claims for breach of fiduciary duty.

80. The breach of a fiduciary duty entitles the aggrieved party to recover all compensation the Defendant received during the period of the breach, and such damages are considered compensatory.

81. Defendant's breaches of fiduciary duties caused at minimum, the loss of the $185,000 value of Collins's home from the Defendant's failure to remedy Collins's fraudulent transfer and conveyance of her home to frustrate the collectability of an inchoate wrongful death action that Defendant failed to file.

82. This would have allowed collecting the proper monetary damages from a wrongful death case against Collins.

83. But for Defendant's breaches of the fiduciary duty owed to Plaintiff as a beneficiary in an inchoate wrongful death case, by not filing such a Court action against Collins, Plaintiff would have realized a larger monetary recovery rather than the lower recovery from the settlement with Collins's insurer, since Collins had at minimum a collectable asset in her home, to satisfy a money judgment in such a potential Court case, and Defendant would have won a such a wrongful death case for reasons stated above and below herein.

84. Defendant's breach of the fiduciary duty owing to Plaintiff include without limitation, not filing said Court action as stated above, but instead entering the settlement with Collins's insurer, which breach proximately caused Plaintiff's monetary damages by receiving less money from the insurer settlement than would have been received in a wrongful death court action since Collins had a collectable asset of her home to satisfy a money judgment in such a potential Court case.

85. Defendant received $83,333.33 in attorneys' fees from the insurer's settlement during the period of the breaches here and these are compensatory monetary damages owed to Plaintiff since Defendant's breaches proximately caused these damages.

86. Awarding of compensatory monetary damages provides a basis for the awarding of punitive damages for the Defendant's breaches of fiduciary duties.

87. Punitive damages are appropriate here *inter alia* to deter the conduct of the Defendant's breaches of fiduciary duties.

88. Allowing punitive damages here would, *inter alia,* also promote a public policy of deterring conduct of breaching fiduciary duties by other attorneys in representing their clients for reasons stated as follows.

89. Allowing punitive damages here is also a proper form of relief for the Defendant's breaches of fiduciary duty due to*:* a) the failure to file a Court action to adjudicate that the transfer/conveyance was fraudulent and voidable of Collins home into the Joyce M. Collins Revocable Living Trust; and b) the failure to file a Court action to void the fraudulent transfer and conveyance that would have made said $185,000 home available for collectability of a potential wrongful death judgment, in addition to adding the insurance policy limits to satisfy an underlying judgment.

90. Allowing punitive damages here is a proper form of relief for the Defendant's breaches of fiduciary duty due to the failure to file a Court action to recover a judgment for the $185,000 value of the fraudulently transferred and conveyed home by Collins that would have allowed collectability of the $185,000 to satisfy a potential wrongful death court judgment, in addition to using her insurance policy limit to satisfy such a judgment.

91. Allowing punitive damages here is a proper form of relief for the Defendant's breaches of fiduciary duty since, but for the Defendant's breaches, there would have been a significant

13

$185,000 asset of Collins's home available for collection of an underlying potential judgment in favor of Plaintiff as a third party beneficiary and next of kin of Stacey Johnson, against Collins for liability for Stacey Johnson's wrongful death, in addition to the availability of her insurance policy limit to satisfy such a judgment.

92. Allowing punitive damages here is a proper form of relief for the Defendant's breaches of fiduciary duty, since, but for the Defendant's breaches, the fraudulent transfer as stated above should have been voided such that ownership of the home of Collins would have reverted back to her, and a lien could then have been placed on the home preventing another potential fraudulent transfer attempt, making Collins's home available for collection of part of an underlying judgment for Plaintiff as a beneficiary and next of kin of Stacey Johnson against Collins for liability for Stacey Johnson's wrongful death, in addition to having her insurance policy limit available to satisfy a judgment.

93. Allowing punitive damages here is a proper form of relief for the Defendant's breaches of fiduciary duty since it would foster a public policy of providing grounds to other litigants to obtain heretofore unavailable relief in similar contexts, i.e. to litigate against other lawyers' breaches of fiduciary duties.

94. Allowing punitive damages here is a proper form of relief not only for the Defendant's breaches of fiduciary duty in failing to detect Collins's fraudulent transfer but also to foster a public policy of deterring conduct of similar parties like Collins in attempting fraudulent transfers to avoid collectability when their liability for a money judgment seems reasonably possible.

95. Collins knew or should have known there was a reasonable possibility she would become liable as a judgment debtor in a potential case involving Stacey Johnson's wrongful death, since the MVA involved no third parties.

14

96. This allows the reasonable inference that she would not have fraudulently transferred and conveyed her home into her own trust of which she was the sole trustee for $1 in 23 days after the MVA.

97. But for Defendant's breach of its fiduciary duty to Plaintiff, a successful wrongful death case against Collins would have occurred which would have yielded a higher monetary recovery than the insurer settlement, which would have been collectable against Collins at minimum from her $185,000 home plus the full insurance proceeds of $250,000.

98. It is proper to make a judicial exception to the element of collectability of an underlying judgment when the Defendant's breach of fiduciary duty exterminated said collectability by failing to detect Collins's fraudulent transfer.

99. Such an exception would, *inter alia,* promote a public policy of encouraging due care by attorneys in representing their clients.

100. Alternatively, if a judicial exception were made to the element of collectability of an underlying judgment in a breach of fiduciary duty case, it would equitably address the Defendant's breach of voiding said collectability.

101. To make such a judicial exception, would not involve a hyper-technical issue, but would involve an issue of considerable significance to this Plaintiff and similarly situated potential Plaintiffs.

102. To make such a judicial exception, would foster a public policy of discouragement of similar fraudulent actors like Collins, in making fraudulent transfers to avoid collectability when their liability seems reasonably possible.

103. Collins knew or should have known there was a reasonable possibility she would become liable as a judgment debtor in a potential case involving Stacey Johnson's wrongful death.

104. But for Defendant's breach, a successful underlying wrongful death case would have occurred that would have been collectable against Collins.

WHEREFORE Plaintiff requests judgment in his favor and against Defendant and as follows.

a. Entering judgment against Defendant Waechter that it breached the fiduciary duty owed to Plaintiff.

b. Entering judgment against Defendant for said breaches in an amount to be determined at trial, at minimum in the amount of Collins's insurance policy limit of $250,000 plus Collins's home value of $185,000 as compensatory damages.

d. Entering judgment against Defendant Waechter in the amount of its attorney's fees of $83,333.33 allowed by the probate Court from the insurer settlement, as compensatory damages.

e. Awarding punitive damages against Defendant for said breaches of fiduciary duties in an amount to be determined at trial.

f. Entering a judgment for the statutory costs in this instant case.

g. Entering any further proper relief against the Defendant and in favor of Plaintiff.

Respectfully presented,

By: *s/John O. Noland Jr.*

John O. Noland Jr.
Attorney at Law
79 West Monroe St., Suite 823
Chicago, IL 60603
(312) 327-7000
(Atty # 6239394)
jnolandjr@comcast.net

## 735 ILCS § 5/2-606 AFFIDAVIT

The undersigned upon oath states the following,

1. I am an Illinois resident, and I have personal knowledge of the facts in this statement.

2. I do not recall receiving or seeing a copy of any written contract for legal services by The Darren Findling Law Firm, PLC, to Kristina Johnson, or any written contract for legal services by The Law Offices of Jason A. Waechter, to Kristina Johnson.

3. I looked through my records and did not find any of these written contracts.

FURTHER SAYETH AFFIANT NAUGHT

*Nathaniel Johnson Jr.*

Nathaniel Johnson Jr

Sworn and Signed on this 7th day of SEPTEMBER 2022

*John O. Noland Jr.*
NOTARY PUBLIC

JOHN O. NOLAND, JR.
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires Apr 28, 2026

EXHIBIT 1